No. 26-1507

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

Olga Diaz,

> Plaintiff-Appellant,

v.

James Schmidt,

> Defendant-Appellee.

On Appeal from a Final Judgment of the
United States District Court for the Western District of Wisconsin
Case No. 24-cv-00161-jdp, Hon. James D. Peterson

## REPLY BRIEF FOR PLAINTIFF-APPELLANT
## OLGA DIAZ

Michael R. Fox
  *Counsel of Record*
Christopher M. Kloth
Fox & Fox, S.C.

Umair Ahsan
  Student Counsel

Alex Bodaken
Brian Wolfman
Ciara Cooney
GEORGETOWN LAW APPELLATE
  COURTS IMMERSION CLINIC
600 New Jersey Ave., NW,
Suite 312
Washington, D.C. 20001
(202) 662-9016
alex.bodaken@georgetown.edu

Counsel for Plaintiff-Appellant Olga Diaz

August 12, 2026

# Table of Contents

Table of Authorities.................................................................................ii

Introduction and Summary of Argument ...............................................1

Argument....................................................................................................2

I.   Sovereign immunity does not bar Diaz's claims..............................2

    A.  Diaz's individual-capacity claims are not barred by
        sovereign immunity...............................................................2

        1.  The Eleventh Amendment bars individual-capacity
            claims only in limited circumstances. ...............................2

        2.  The district court's and Schmidt's view of sovereign
            immunity contravenes binding precedent, is
            illogical, and would undermine Section 1983. .....................5

        3.  Properly understood, sovereign immunity does not
            preclude Diaz's claims. ......................................................11

    B.  This Court should excuse the waiver of Diaz's official-
        capacity claim for reinstatement, which all agree is not
        barred by sovereign immunity. ..............................................18

II.  Schmidt is not entitled to summary judgment on the merits. ........19

    A.  A reasonable jury could find that Schmidt retaliated
        against Diaz based on her speech to UW System
        Investigator Christine Buswell. ..............................................19

    B.  A reasonable jury could find that Schmidt retaliated
        against Diaz based on her refusals to accede to
        Schmidt's requests to dissuade Hoffman from filing a
        discrimination complaint. ......................................................21

Conclusion ...............................................................................................30

Certificate of Compliance.........................................................................

# Table of Authorities

**Cases**                                                                                   **Page(s)**

*Adebiyi v. S. Suburban Coll.,*
  98 F.4th 886 (7th Cir. 2024) ............................................................ 24

*Arreola-Castillo v. United States,*
  889 F.3d 378 (7th Cir. 2018) ........................................................... 19

*Banes v. Levine,*
  2026 WL 1623113 (W.D. Wis. June 5, 2026),
  *appeal pending*, No. 26-2346 ......................................................... 7

*Bostock v. Clayton County,*
  590 U.S. 644 (2020) ........................................................................ 30

*Bradley v. Vill. of Univ. Park,*
  929 F.3d 875 (7th Cir. 2019) ......................................................... 1, 6

*Bradley v. Vill. of Univ. Park,*
  59 F.4th 887 (7th Cir. 2023) ........................................................... 18

*Carey v. Piphus,*
  435 U.S. 247 (1978) ........................................................................ 10

*Chrzanowski v. Bianchi,*
  725 F.3d 734 (7th Cir. 2013) ........................................................... 22

*Clark v. All Acquisition, LLC,*
  886 F.3d 261 (2d Cir. 2018) ........................................................... 13

*Coleman v. Donahoe,*
  667 F.3d 835 (7th Cir. 2012) ..................................................... 25, 26

*Davis v. United States,*
  512 U.S. 452 (1994) ........................................................................ 18

*Dugan v. Rank,*
  372 U.S. 609 (1963) ..................................................................... 3, 15

*Dwyer v. Regan,*
777 F.2d 825 (2d Cir. 1985),
*modified on other grounds*, 793 F.2d 457 (2d Cir. 1986)............. 13, 15

*Erdman v. City of Madison,*
91 F.4th 465 (7th Cir. 2024) ...................................................... 18

*Garcetti v. Ceballos,*
547 U.S. 410 (2006).................................................................22

*Gerlach v. Rokita,*
95 F.4th 493 (7th Cir. 2024) .................................... 4, 5, 13, 15, 16

*Greengrass v. Int'l Monetary Sys. Ltd.,*
776 F.3d 481 (7th Cir. 2015).............................................. 25, 26

*Hafer v. Melo,*
502 U.S. 21 (1991)...................................... 1, 2, 3, 6, 7, 8, 11

*Haynes v. Ind. Univ.,*
902 F.3d 724 (7th Cir. 2018)........................1, 3, 5, 8, 9, 10, 12, 16, 17

*Idaho v. Coeur d'Alene Tribe,*
521 U.S. 261 (1997)................................................................ 15

*Isabell v. Trustees of Ind. Univ.,*
432 F. Supp. 3d 786 (N.D. Ind. 2020)........................................ 9, 10

*Johnson v. Univ. of Cincinnati,*
215 F.3d 561 (6th Cir. 2000).................................................... 13

*Kidwell v. Eisenhauer,*
679 F.3d 957 (7th Cir. 2012)....................................................27

*Kristofek v. Vill. of Orland Hills,*
832 F.3d 785 (7th Cir. 2016)....................................................22

*Lane v. Franks,*
573 U.S. 228 (2014)................................................................22

*Lenea v. Lane,*
882 F.2d 1171 (7th Cir. 1989)............................................. 13, 15

*Lewis v. Clarke,*
581 U.S. 155 (2017)......................................................................3, 7

*Linhart v. Glatfelter,*
771 F.2d 1004 (7th Cir. 1985).......................................................24

*Luder v. Endicott,*
253 F.3d 1020 (7th Cir. 2001)............................... 1, 3, 4, 5, 11, 12, 16

*Magassa v. Mayorkas,*
52 F.4th 1156 (9th Cir. 2022) ........................................................13

*Mahmoud v. Bd. of Regents,*
2026 WL 242087 (W.D. Wis. Jan. 29, 2026)....................................16

*Marshall v. Porter Cnty. Plan Comm'n,*
32 F.3d 1215 (7th Cir. 1994).........................................................23

*Massey v. Johnson,*
457 F.3d 711 (7th Cir. 2006).........................................................27

*McDonnell v. Cisneros,*
84 F.3d 256 (7th Cir. 1996)......................................................27, 28

*McGreal v. Vill. of Orland Park,*
850 F.3d 308 (7th Cir. 2017).........................................................26

*Medcom Holding Co. v. Baxter Travenol Laby's, Inc.,*
106 F.3d 1388 (7th Cir. 1997).......................................................14

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.,*
108 F.4th 458 (7th Cir. 2024) ............................................. 19, 21, 22

*Negron-Almeda v. Santiago,*
528 F.3d 15 (1st Cir. 2008) ...........................................................14

*Omosegbon v. Wells,*
335 F.3d 668 (7th Cir. 2003)............................1, 5, 8, 9, 10, 12, 16, 17

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984).......................................1, 3, 4, 6, 10, 12, 15, 16, 17

*Randolph v. IMBS, Inc.*,
   368 F.3d 726 (7th Cir. 2004)..................................................................11

*Reinebold v. Ind. Univ.*,
   2019 WL 1897288 (N.D. Ind. Apr. 25, 2019)..................................9, 10

*Republic Gear Co. v. Borg-Warner Corp.*,
   406 F.2d 57 (7th Cir. 1969)..................................................................14

*Rucker v. Higher Educ. Aids Bd.*,
   669 F.2d 1179 (7th Cir. 1982)..............................................................28

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974)................................................................................3

*See v. Ill. Gaming Bd.*,
   29 F.4th 363 (7th Cir. 2022) ................................................................26

*Singleton v. Wulff*,
   428 U.S. 106 (1976)..............................................................................18

*Smith v. Fruin*,
   28 F.3d 646 (7th Cir. 1994)..................................................................23

*Smith v. Wade*,
   461 U.S. 30 (1983)................................................................................17

## Statute

42 U.S.C. § 2000e-3(a) ..............................................................................27

## Other Authority

Universities of Wisconsin, *Complaint Procedures*, last
   revised Aug. 4, 2025, https://perma.cc/XE2T-64Y9..............................20

## Introduction and Summary of Argument

This Court's decisions must accord not only with each other but also with Supreme Court case law. It follows, then, that if one party's theory "runs into [a] line of" Supreme Court "§ 1983 precedent," it must be rejected. *Bradley v. Vill. of Univ. Park*, 929 F.3d 875, 898-99 (7th Cir. 2019).

Yet Schmidt, like the district court, adopts just such a theory. He reads *Omosegbon v. Wells*, 335 F.3d 668 (7th Cir. 2003), and *Haynes v. Indiana University*, 902 F.3d 724 (7th Cir. 2018), to stand for the proposition that sovereign immunity bars any individual-capacity damages claim "stemming from [a] state employment contract." Schmidt Br. 26. But that articulation is irreconcilable with *Hafer v. Melo*, 502 U.S. 21 (1991). Like Olga Diaz here, the *Hafer* plaintiffs sought money damages, through an individual-capacity suit, stemming from the termination of their state employment, and the Supreme Court held that "the Eleventh Amendment does not restrict their ability to sue in federal court." *Id.* at 23-24, 31.

Here's the actual test for when a cause of action denominated as an individual-capacity claim seeking monetary relief is precluded as "really and substantially … against the state," *Luder v. Endicott*, 253 F.3d 1020, 1023 (7th Cir. 2001): The claim cannot seek recovery of public funds or compel the state to act (or not act) in a certain way. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984). Under that test,

flowing from controlling Supreme Court precedent, sovereign immunity does not bar Diaz's claims because—as her opening brief explained—she seeks compensatory and punitive damages caused by Schmidt's personal, discretionary violations of the Constitution and federal law. Schmidt's responses, which rely on an overreading of *Omosegbon* and *Haynes*, thus get him nowhere.

If this Court holds that sovereign immunity does not bar Diaz's claims, the parties agree that the proper course would be to remand because the district court never considered the merits. Opening Br. 33; Schmidt Br. 44-45. But if the Court elects to reach the merits, Schmidt is not entitled to summary judgment. Schmidt does not dispute that Diaz has sufficiently proved several elements of her First Amendment and Section 1981 claims, and material disputes of fact exist regarding the remaining elements. So, if the Court gets to the merits, it should remand for trial.

## Argument

## I. Sovereign immunity does not bar Diaz's claims.

### A. Diaz's individual-capacity claims are not barred by sovereign immunity.

#### 1. The Eleventh Amendment bars individual-capacity claims only in limited circumstances.

Schmidt acknowledges that "the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991)

(quoting *Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974)); *see* Schmidt Br. 16. "Officers sued in their personal capacity come to the court as individuals." *Lewis v. Clarke*, 581 U.S. 155, 162-63 (2017) (quoting *Hafer*, 502 U.S. at 27) (brackets omitted). So, in individual-capacity cases, the "real party in interest is the individual, not the sovereign." *Id.* at 163.

True, a suit for damages denominated as one filed in the plaintiff's individual capacity is sometimes "really and substantially … against the state." *Luder v. Endicott*, 253 F.3d 1020, 1023 (7th Cir. 2001). But that occurs only in limited circumstances. The state is the real party in interest, first, "if the judgment sought would expend itself on the public treasury or domain," or, second, if the plaintiff's claim would "interfere with the public administration," such that "the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 n.11 (1984) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)).

Determining whether a state is the real party in interest "depends on the circumstances," *Luder*, 253 F.3d at 1022, and can be a "knotty and fact-bound inquiry," *Haynes v. Ind. Univ.*, 902 F.3d 724, 732 (7th Cir. 2018); *see* Schmidt Br. 17. But the inquiry's object is clear. The goal is to determine whether, in practice, the plaintiff's damages claim "*demonstrably* has the *identical* effect as a suit against the state," *Luder*, 253 F.3d at 1023—that is, whether the claim would compel payment from

the public fisc or impose duties on the state. *See Pennhurst*, 465 U.S. at 101 n.11.

For instance, in *Luder*, this Court determined that a Fair Labor Standards Act case denominated as against defendants in their individual capacities was really against the state. By "seeking to force the state to accede to their view of the [FLSA] and to pay them accordingly," the Court reasoned, the plaintiffs were really "seeking to accomplish e*xactly* what they would accomplish were they allowed to maintain this suit against the state and did so successfully." *Luder*, 253 F.3d at 1024. In other words, the plaintiffs' claims flunked both *Pennhurst* prongs: They required payment from the state and compelled the state to adopt the plaintiffs' view of the state's obligations. 465 U.S. at 101 n.11.

*Gerlach v. Rokita*, 95 F.4th 493 (7th Cir. 2024), also "provides a helpful illustration," Schmidt Br. 18, though not for the reasons Schmidt suggests. When the plaintiff there sought interest from Indiana officials that had accrued after she reclaimed dormant property, the key question was whether "the amount she claim[ed] she [was] owed should have been paid by the state." *Gerlach*, 95 F.4th at 501. The answer was yes: The interest had "flowed to the state, not individual state employees," and the money was "in the state coffers, not the personal bank accounts" of Indiana officials. *Id.* So the claim was barred under *Pennhurst*. *Id.*

*Omosegbon* and *Haynes* turned on the same inquiry. In *Omosegbon*, it was "inescapable" that any "judgment" awarding "backpay and other forms of monetary compensation based on an employment contract" would "be paid by the state rather than the individual defendants." 335 F.3d 668, 673 (7th Cir. 2003). Likewise, in *Haynes*, there was "no reason to believe that" the individual defendants, "rather than the University, would foot the bill" for a judgment based on an employment contract. 902 F.3d at 732. Sovereign immunity thus doomed the individual-capacity damages claims in *Omosegbon* and *Haynes* for the same reason it foreclosed the claims in *Luder* and *Gerlach*: Each claim would have required the state to pay a judgment in the plaintiff's favor.

> **2. The district court's and Schmidt's view of sovereign immunity contravenes binding precedent, is illogical, and would undermine Section 1983.**

**a.** The district court and Schmidt adopt a different, broader view of the circumstances in which nominally individual-capacity suits are "really and substantially … against the state." *Luder*, 253 F.3d at 1023. The district court stated that, under *Omosegbon* and *Haynes*, "sovereign immunity bars a state-employed plaintiff from bringing individual-capacity claims against state-employed supervisors or coworkers who deprived him of rights, benefits, or opportunities arising from his employment relationship with the state." ECF 73 at 5. Similarly, Schmidt

5

argues that sovereign immunity turns on whether plaintiffs' "sought-after damages stem[] from their state employment contracts." Schmidt Br. 24. On either telling, the dispositive issue in the sovereign-immunity analysis is not whether the plaintiff's damages would be paid by the state, or whether the plaintiff's claim would interrupt state administration, but whether the claim arises in the employment context; if so, the claim is barred.

That view has no grounding in the real-party-in-interest test established by *Pennhurst*. 465 U.S. at 101 n.11. More damningly, it flatly contravenes *Hafer v. Melo*, 502 U.S. 21 (1991). As Diaz's opening brief explains (at 29-30), the *Hafer* plaintiffs sought monetary damages from defendant Barbara Hafer, in her personal capacity, after Hafer terminated them from state employment. 502 U.S. at 23-24. These damages thus represented compensation for lost "benefits … arising from [an] employment relationship with the state," ECF 73 at 5, and "stemmed from [the plaintiffs'] state employment contracts," Schmidt Br. 24. Yet the plaintiffs' claims were not barred. The Supreme Court could hardly have been clearer: "Insofar as respondents seek damages against Hafer personally, the Eleventh Amendment does not restrict their ability to sue in federal court." *Hafer*, 502 U.S. at 31.

Because Schmidt's and the district court's employment-contract-based reading of *Omosegbon* and *Haynes* "runs into" Supreme Court precedent, it cannot be correct. *Bradley v. Vill. of Univ. Park*, 929 F.3d 875, 898 (7th

Cir. 2019). Recognizing the problem, Schmidt first attempts to narrow *Hafer* as having nothing to do with whether "the state is the real party in interest." Schmidt Br. 38-39. Not so. As just explained, *Hafer* held that sovereign immunity did not bar claims imposing personal liability for damages inarguably stemming from plaintiffs' employment contracts with the state. 502 U.S. at 23-24, 31. For that reason, later Supreme Court precedent recognizes that *Hafer* concerned "whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Lewis v. Clarke*, 581 U.S. 155, 161-62 (2017) (citing *Hafer*, 502 U.S. at 25).

Schmidt next tries to narrow the district court's opinion by suggesting that a later opinion by the same judge—*Banes v. Levine*, 2026 WL 1623113 (W.D. Wis. June 5, 2026), *appeal pending*, No. 26-2346—confirmed that the decision below was a "fact-bound inquiry," not a "blanket approach" to contract-based cases. Schmidt Br. 40. But *Banes* repeated, word-for-word, the same broad "principle" barring all claims seeking compensation for lost "benefits … arising from" state employment that drove the decision here. 2026 WL 1623113, at *4; *compare* ECF 73 at 5. And Schmidt's proposed rule—under which sovereign immunity would preclude all claims seeking damages "stemm[ing] from … state employment contracts," Schmidt Br. 24—is equally irreconcilable with *Hafer*.

Schmidt also suggests that *Hafer* is distinguishable because the plaintiffs' speech in that case "did not occur at the workplace or in the context of their employment." Schmidt Br. 40-41. This argument is a sure sign that Schmidt has lost sight of sovereign-immunity first principles. The location and nature of a plaintiff's activity can matter when evaluating the merits of a First Amendment retaliation claim (*see infra* at 22-24), but it has nothing to do with the sovereign-immunity calculus. Sovereign immunity turns on who the *defendants* really are and what they've done: whether the officers "sued for damages … assume the identity of the government that employs them"—in which case sovereign immunity attaches—or "come to court as individuals"—in which case it does not. *Hafer*, 502 U.S. at 27. What the plaintiff said, or where she spoke, is irrelevant.

It is unsurprising that *Hafer* goes uncited in *Omosegbon* and *Haynes*, as neither party's briefing in either case so much as mentions *Hafer*.[1] But *Hafer* is binding Supreme Court precedent with which this Court's cases must be reconciled. As a result, any broader language in *Omosegbon* and *Haynes* suggesting that sovereign immunity turns on whether a claim is

---

[1] The *Omosegbon* briefs are located at 2002 WL 32170408 (opening brief), 2002 WL 32170409 (response brief), and 2002 WL 32170410 (reply brief). The *Haynes* opening brief is not on Westlaw, but a publicly accessible version is located at entry 11 on the appellate docket in case number 17-2890. The remaining *Haynes* briefs are located at 2017 WL 6611860 (response brief) and 2018 WL 454130 (reply brief).

contract-based, *see Omosegbon*, 335 F.3d at 673; *Haynes*, 902 F.3d at 732, must be treated as dicta. By contrast, and consistent with *Hafer*, the holding of both cases is that where a judgment sought by the plaintiffs will be paid by the state, the claim is barred by sovereign immunity—and claims based on employment contracts will sometimes fall into that category. *Omosegbon*, 335 F.3d at 673; *Haynes*, 902 F.3d at 732.

**b.** Flouting Supreme Court precedent is not the only problem here. Schmidt's proposal to impose a sovereign-immunity bar on any monetary-relief claim arising in the context of an employment contract with the state presents several other concerns.

Consider Schmidt's explanation for why claims against state employers were allowed to proceed in *Reinebold v. Indiana University*, 2019 WL 1897288 (N.D. Ind. Apr. 25, 2019), and *Isabell v. Trustees of Indiana University*, 432 F. Supp. 3d 786 (N.D. Ind. 2020): namely, that the plaintiff in both cases was a job *applicant*, not an *employee* (and, thus, no contract with the state yet existed). *See* Schmidt Br. 30 (discussing *Reinebold*); *id.* at 35-36 (discussing *Isabell*). Even setting aside Schmidt's incorrect description of *Isabell*—where the plaintiff already was a state employee and sought damages related to the denial of a promotion, 432 F. Supp. 3d at 789-92—his applicant-employee distinction is illogical. If it were right, a state employer who wanted to discriminate or retaliate against a job applicant could just hire and then immediately fire the

person—the employment contract, on Schmidt's telling, would preclude monetary damages.

That makes no sense, and it does not reflect what either *Reinebold* or *Isabell* actually turned on. Rather, both cases permitted the complaints to proceed because a judgment would not "interfere with public administration, restrain or compel the state to act, or necessarily expend public treasury funds." *Isabell*, 432 F. Supp. 3d at 795 (citing *Pennhurst*, 465 U.S. at 101 n.11); *see Reinebold*, 2019 WL 1897288, at *3 ("Defendants have not shown that a judgment against [the individual defendants] will expend itself on the state's treasury. Therefore, the Court will not dismiss Reinebold's § 1983 individual capacity claims based on sovereign immunity.").

Tying the sovereign-immunity analysis to the existence of an employment contract would also eliminate a substantial category of Section 1983 claims and undermine the statute's goals. *See* Opening Br. 30-31. As explained above (at 5-6), both the district court and Schmidt would have *Omosegbon* and *Haynes* bar all individual-capacity claims seeking employment-related damages. *See* ECF 73 at 5; Schmidt Br. 26. That rule would significantly undermine Section 1983's goals of deterring violations of federal law and rectifying them when they occur. *See Carey v. Piphus*, 435 U.S. 247, 254-57 (1978); Opening Br. 30-31.

Schmidt suggests that plaintiffs need not worry because Title VII could pick up the slack from any contraction of Section 1983. Schmidt Br.

42. But Title VII does not reach the same scope of misconduct as does Section 1983. Title VII does not, for example, create a cause of action for First Amendment or due-process violations. So, an employee whose constitutional rights are violated may well have nowhere to turn if, as Schmidt proposes and the district court held, sovereign immunity bars all Section 1983 monetary-relief claims arising in the context of a state employment contract.

In any event, both Section 1983 and Title VII are congressional enactments that must be given their full scope. Arguments that Title VII superseded the older civil-rights statutes, like Section 1983, "have never succeeded." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 732 (7th Cir. 2004). Though the statutes overlap to some degree, "both old and new remedial systems may be enforced according to their terms." *Id*. And *Hafer* establishes that Section 1983's terms permit individual-capacity damages claims by former employees against state officials, even if the claims arise in the context of a contractual relationship, because state officials "sued in their personal capacity come to court as individuals." *Hafer*, 502 U.S. at 27.

### 3. Properly understood, sovereign immunity does not preclude Diaz's claims.

Diaz's complaint is not barred by sovereign immunity because it does not represent "an effort at an end run around the Eleventh Amendment." *Luder*, 253 F.3d at 1025. As Diaz's opening brief explains (at 20-28), three

elements of Diaz's complaint together demonstrate that her claims are not "really and substantially … against the state," *Luder*, 253 F.3d at 1023: (1) Diaz sought compensatory and punitive damages payable only by Schmidt, and (2) Schmidt took personal, discretionary actions (3) that violated Diaz's constitutional and statutory rights. (Because elements (2) and (3) overlap, we examine them together below.) Where, as here, all three elements are present, there is no risk that a nominally individual-capacity claim for damages will in fact require public payment or impose obligations on the state. *See Pennhurst*, 465 U.S. at 101 n.11.

**Form of damages.** Schmidt does not contest that because Diaz seeks compensatory and punitive damages, they are payable only by him rather than the state (and that indemnification cannot change the analysis). *See* Schmidt Br. 27; Opening Br. 22-23. Those concessions alone distinguish this case from *Omosegbon* and *Haynes*: *Omosegbon* deemed it "inescapable that any … judgment [in that case would] be paid by the state," 335 F.3d at 673, and *Haynes* found "no reason to believe" that individual defendants would pay damages, 902 F.3d at 732. But here it is undisputed that a damages judgment would run against Schmidt, not the state.

True, the complaint in *Haynes* sought compensatory damages, while the complaint in *Omosegbon* sought forms of "monetary compensation" that may have been properly categorized as compensatory or punitive. *See* Schmidt Br. 25; Opening Br. 21 n.3. But in both cases, the plaintiffs

failed to meaningfully explain to this Court why sovereign immunity does not bar claims for compensatory or punitive damages. Because the issue was "not briefed," this Court's decision to preclude these damages through sovereign immunity "was dicta." *Clark v. All Acquisition, LLC*, 886 F.3d 261, 265 n.10 (2d Cir. 2018).

When this Court affirmatively considered the connection between the requested form of relief and sovereign immunity, it described the key question as whether the "sums" requested "should have been paid by the State" or by the individual defendants. *Lenea v. Lane*, 882 F.2d 1171, 1178 (7th Cir. 1989) (quoting *Dwyer v. Regan*, 777 F.2d 825, 836 (2d Cir. 1985), *modified on other grounds*, 793 F.2d 457 (2d Cir. 1986)); *see also Gerlach*, 95 F.4th at 501 (same). The answer to that question here is undisputed: Schmidt will be required by a judgment in this case to pay all of Diaz's damages.

As a result, sovereign immunity does not apply. There is no basis for Schmidt's argument that sovereign immunity more readily attaches for Section 1981 claims than for others, Schmidt Br. 23-24, as sister circuits have explicitly held that sovereign immunity does not preclude a "§ 1981 claim [that] seeks damages from [a defendant] as an individual, not as an arm of the sovereign." *Magassa v. Mayorkas*, 52 F.4th 1156, 1162 (9th Cir. 2022); *see Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 & n.3 (6th Cir. 2000) (similar).

Finally, "the calculation and assessment of damages is a question of fact that is reserved for the jury." *Medcom Holding Co. v. Baxter Travenol Laby's, Inc.*, 106 F.3d 1388, 1400 (7th Cir. 1997). So, it may be that some of Diaz's compensatory damages flowing from Schmidt's misconduct—though not literally "lost wages," *see* Opening Br. 16—are eventually "measured" in part "by the value of the contract," *Republic Gear Co. v. Borg-Warner Corp.*, 406 F.2d 57, 63 (7th Cir. 1969). If so, that fact would change neither the nature of the case nor who will ultimately pay the damages. *See id.*; *contra* Schmidt Br. 26. As the First Circuit has put it, "a successful plaintiff is ... entitled to receive compensatory damages" through an individual-capacity suit, and if "[p]roperly proven," these damages may equal what was provided by contract. *Negron-Almeda v. Santiago*, 528 F.3d 15, 26 (1st Cir. 2008). But what matters—and what precludes the application of sovereign immunity—is that any damages award would be payable solely by Schmidt, not the state.

**Schmidt's personal, discretionary decision to violate Diaz's legal rights.** That Diaz's individual-capacity claims are really against Schmidt, and not the state, is confirmed by the complaint's allegations: Schmidt's retaliation was a personal, discretionary decision to violate constitutional and statutory law. *See* Opening Br. 23-28. These aspects of the case ensure that Diaz's request for compensatory and punitive damages is not an attempt to subvert the Eleventh Amendment's "real

interests" via "elementary mechanics of captions and pleading." *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 270 (1997).

Consider the Second Circuit's account in *Dwyer*—a case cited favorably by this Court in *Lenea* and *Gerlach*—as to why a "request for compensatory and punitive damages stands on different footing from [a] request for backpay." *Dwyer*, 777 F.2d at 836. "[T]here is no Eleventh Amendment impediment" to recovering compensatory and punitive damages, *Dwyer* explained, because these damages stem from breaches of "dut[ies] not to deny" individuals "federally protected right[s]," not a "duty … to pay [a plaintiff's] salary." *Id.* at 836-37. So too here: Diaz's claims arise from Schmidt's personal actions that violated the Constitution and a federal statute. Opening Br. 23-28. That underlying substance, not the label Diaz has placed on her damages, confirms the legitimacy of Diaz's individual-capacity claims.

Because Diaz's complaint involves Schmidt's personal decisions that violated legal duties, moreover, a judgment in her favor would not "interfere with the public administration, … restrain the Government from acting, or … compel it to act." *Pennhurst*, 465 U.S. at 101 n.11 (quoting *Dugan*, 372 U.S. at 620). No party here contends that Schmidt's misconduct flowed from the state's interpretation of its legal obligations. All agree that Schmidt may not retaliate based on protected activity; the dispute is over whether he did so. Thus, a judgment in Diaz's favor would not require the state of Wisconsin to "accede to [Diaz's] view of" the law.

15

*Luder*, 253 F.3d at 1024; *see also Gerlach*, 95 F.4th at 496 (detailing the parties' dispute about the proper functioning of Indiana's Unclaimed Property Act). And unlike the complaints in *Omosegbon* and *Haynes*, Diaz's claims do not ask the judiciary to dictate the mechanics of a state university's tenure process or any other state program. *See Omosegbon*, 335 F.3d at 672; *Haynes*, 902 F.3d at 728-30.

The personal nature of Schmidt's mistreatment further separates this case from *Omosegbon* and *Haynes*. As the district judge here recognized in a different case, claims alleging that an employer "personally mistreated" an employee are not barred by sovereign immunity. *Mahmoud v. Bd. of Regents*, 2026 WL 242087, at *7 (W.D. Wis. Jan. 29, 2026). Schmidt attempts to distinguish *Mahmoud*, which involved a state officer's alleged constructive discharge of a state employee, as "uniquely premised on extreme, personal mistreatment that cannot be understood as within the normal bounds of the employment relationship." Schmidt Br. 36-37. But this explanation implies that "non-extreme" retaliatory violations of the First Amendment and civil-rights laws can be properly understood as within the normal bounds of employment and thus barred by sovereign immunity. That cannot be right. Instead, the proper faultline is *Pennhurst*'s: When a case involves personal violations of constitutional or statutory law, such that remedying the misconduct would neither interfere with public administration nor direct the

activities of the state, sovereign immunity does not apply unless the state would be on the hook to pay damages. 465 U.S. at 101 n.11.

Schmidt's individuated mistreatment of Diaz is a necessary predicate to the claims advanced in her complaint. Schmidt's retaliation against Diaz is attributable to him alone, such that Diaz may seek damages only from Schmidt (and not his successor in office). *See* Opening Br. 25. Similarly, only Schmidt himself may have had the necessary mental state to justify punitive damages under Section 1983. *Id.*; *Smith v. Wade*, 461 U.S. 30, 56 (1983). And although Schmidt tries to sidestep Diaz's emotional and psychological damages, *see* Schmidt Br. 26-27, Diaz's complaint requests damages for "psychological injury, emotional distress, [and] loss of reputation" three times over, App. 11, 20, and Diaz reiterated at her deposition that she expected to be able to calculate these damages with an expert's help, ECF 32 at 66 (Diaz Depo. 257:18-21).

Diaz's claims are thus predicated on personal and discretionary mistreatment in a way that *Omosegbon* and *Haynes* were not. Those cases focused on universities' hiring and tenure processes, not the intentional discriminatory acts of individuals or the personal nature of damages suffered by the plaintiff. *Omosegbon*, 335 F.3d at 672; *Haynes*, 902 F.3d at 728-30. That distinction—plus Diaz's request for compensatory and punitive damages stemming from Schmidt's personal constitutional and statutory violations—demonstrates that Diaz's claims are not barred by sovereign immunity.

**B.** **This Court should excuse the waiver of Diaz's official-capacity claim for reinstatement, which all agree is not barred by sovereign immunity.**

Schmidt agrees that sovereign immunity does not bar Diaz's official-capacity claim for reinstatement. Schmidt Br. 42. He nonetheless contends that this Court should not excuse Diaz's waiver of that claim below. *Id.* at 42-44; *see* Opening Br. 31-32.

Whether to excuse waiver is discretionary, and "there is no hard-and-fast rule preventing [this Court] from reaching" a waived issue. *Bradley v. Vill. of Univ. Park*, 59 F.4th 887, 901 (7th Cir. 2023). Although it is generally "sound prudential practice" not to consider waived arguments, "there are times when prudence dictates the contrary," *Erdman v. City of Madison*, 91 F.4th 465, 472 (7th Cir. 2024) (quoting *Davis v. United States*, 512 U.S. 452, 464 (1994) (Scalia, J., concurring)), including "where the proper resolution [of the waived issue] is beyond any doubt, or where injustice might otherwise result," *Bradley*, 59 F.4th at 901 (quoting *Singleton v. Wulff*, 428 U.S. 106, 121 (1976)).

Under these standards, Diaz's waiver should be excused. As indicated, the waived issue is beyond doubt, and the parties agree that sovereign immunity does not preclude Diaz's official-capacity reinstatement claim. *See* Opening Br. 32-33; Schmidt Br. 42. Injustice would thus result if Diaz were barred from pursuing an inarguably permissible claim. And although Schmidt alludes to the prejudice of preparing for Diaz's possible

reinstatement, *see* Schmidt Br. 44, any prejudice would be minimal—Diaz would not be reinstated unless she is successful at trial months, if not years, from now.

## II. Schmidt is not entitled to summary judgment on the merits.

Schmidt agrees that, if sovereign immunity does not bar Diaz's claims, this Court should remand for the district court to consider the merits in the first instance. Schmidt Br. 14, 44-45; *see* Opening Br. 33. This Court is, after all, "'a court of review,' not 'one of first view.'" *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 108 F.4th 458, 478 (7th Cir. 2024) (quoting *Arreola-Castillo v. United States*, 889 F.3d 378, 383 (7th Cir. 2018)). But if the Court reaches the merits, it should deny summary judgment on all claims and remand for trial.

### A. A reasonable jury could find that Schmidt retaliated against Diaz based on her speech to UW System Investigator Christine Buswell.

Diaz alleges three instances of protected speech—her refusals, on two occasions, of Schmidt's request that she tell Rochelle Hoffman to drop her discrimination complaint, and her interview with Buswell regarding Hoffman's complaint. *See* Opening Br. 34. Schmidt denies the relevance of the Buswell interview, contending that he was unaware of that interview until after he asked for Diaz's resignation (and, thus, that the resignation request couldn't be retaliation for Diaz's comments in the interview). Schmidt Br. 45-46.

But a reasonable jury could find that Schmidt *was* aware of Diaz's interview with Buswell when he sought Diaz's resignation. Hoffman's complaint specifically noted that Diaz had witnessed and tried to address discrimination against Hoffman. App. 379-82. Both Diaz and Teresa O'Halloran informed Schmidt of Hoffman's complaint and routinely provided updates on the ongoing investigation. *See* App. 46, 214 (Schmidt Depo. 139:14-19), 347-48; *see also* App. 250 (Schmidt's call with O'Halloran on September 23, 2022). As Chancellor, Schmidt also affirmed all investigations and received a memorandum of investigation. App. 189 (O'Halloran Depo. 99:19-100:22); *see* App. 117 (Diaz Depo. 24:9-13) ("[P]art of our system process for formal investigations had a requirement that the chancellor be kept abreast of all details of investigations."); Universities of Wisconsin, *Complaint Procedures*, last revised Aug. 4, 2025, https://perma.cc/XE2T-64Y9 ("[A]llegations contained in a complaint must be reviewed by the chancellor or the chancellor's designee.").

Schmidt, moreover, testified that he knew exactly how Diaz felt about Hoffman's case. *See, e.g.*, App. 214 (Schmidt Depo. 137:18-25) ("[Diaz] seemed very energized that [Hoffman's] complaint had been filed."). A jury viewing these facts in a light favorable to Diaz and drawing reasonable inferences in her favor could conclude that Schmidt was aware of Diaz's interview when he asked for Diaz's resignation.

If this Court agrees, it need go no further in its merits analysis. Diaz's opening brief explains why her speech to Buswell satisfies various elements of her First Amendment and Section 1981 claims. *See* Opening Br. 38-41 (First Amendment citizen speech), 42-43 (First Amendment matter of public concern), 46-47 (First Amendment causation), 52-53 (Section 1981 protected activity), 53-54 (Section 1981 reasonableness). Schmidt has forfeited any opposition to these arguments by failing to respond to them in his brief. *See Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 108 F.4th 458, 474 n.3 (7th Cir. 2024). So, if the Court agrees that Diaz has established at least a material dispute of fact that Schmidt was aware of Diaz's interview with Buswell when he sought Diaz's resignation, it should deny summary judgment and remand the case for trial.

**B.    A reasonable jury could find that Schmidt retaliated against Diaz based on her refusals to accede to Schmidt's requests to dissuade Hoffman from filing a discrimination complaint.**

Summary judgment is also unwarranted regarding Diaz's denials of Schmidt's requests to persuade Hoffman to drop her discrimination complaint. To begin with, Schmidt does not contest that he lacks an interest in suppressing Diaz's speech for purposes of her First Amendment claim. *See* Opening Br. 43-44. Nor does he respond to Diaz's argument that qualified immunity is unwarranted. *Id.* at 55-59. Any

21

opposition on those issues is therefore forfeited. *See Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 108 F.4th 458, 474 n.3 (7th Cir. 2024). We now turn to the remaining elements of each claim.

1. **Summary judgment is unwarranted on Diaz's First Amendment claim.**

**a.** Schmidt maintains that Diaz's refusals to Schmidt's requests to dissuade Hoffman are unprotected government speech, not speech by a private citizen, because Diaz spoke to her supervisor during a work meeting. Schmidt Br. 47-48. But those conditions, without more, do not establish that the speech was "pursuant to the employee's 'official responsibilities.'" *Lane v. Franks*, 573 U.S. 228, 239 (2014) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006)). On the contrary, Diaz's speech *opposing* her superior's requests is nothing like the type of speech that lacks constitutional protection: "work product that has been commissioned or created by the employer." *Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 793 (7th Cir. 2016) (quoting *Chrzanowski v. Bianchi*, 725 F.3d 734, 738 (7th Cir. 2013)); *see* Opening Br. 35-38.

Tellingly, Schmidt does not rebut this precedent. Instead, he rests his argument on Diaz's utterance of a single phrase: that refusing Schmidt's directive to interfere with Hoffman's complaint was part of her job. App. 115 (Diaz Depo. 16:9-17:1); *see* Schmidt Br. 48. But as Diaz's opening brief explained (at 35-36), she did not handle affirmative-action complaints, nor was she hired to give legal advice. *See* App. 303 ¶ 1, 316-

17, 339 (O'Halloran Depo. 164:15-22). Based on the full record, a reasonable jury could readily conclude that Diaz's belief in not infringing on employees' rights, her opposition to workplace discrimination, and her understanding of the law—not any job-related obligation—motivated her refusal. *See* App. 108 (Diaz Depo. 213-214), 125 (Diaz Depo. 98:18-99:6). Those are the motivations of a private citizen, not a government employee.

**b.** Nor is there any merit to Schmidt's suggestion that Diaz's speech was not on a matter of public concern because it "addresse[d] only the personal effect on" Diaz herself. Schmidt Br. 49. That's wrong twice over. Legally, a public employee's self-interested motive "may be relevant, but it is not dispositive" as to the public-concern inquiry. *Marshall v. Porter Cnty. Plan Comm'n,* 32 F.3d 1215, 1219 (7th Cir. 1994). In any case, factually, Diaz's refusal was not self-serving because she advocated for *another* employee's rights. *Compare* App. 108 (Diaz Depo. 214:3-8) ("I don't believe in infringing on employees' rights … [s]o I was not under any circumstances going to infringe Rochelle or anybody else from pursuing this as an option."), *with Smith v. Fruin*, 28 F.3d 646, 651 (7th Cir. 1994) (finding an employee's private complaints of his sensitivity to smoke and requesting a personal accommodation to be "on his own behalf and in his own interest").

Schmidt then suggests that Diaz did not raise an issue of public concern because her speech addressed a topic regarding the immediate

people involved. Schmidt Br. 48 (citing *Linhart v. Glatfelter*, 771 F.2d 1004 (7th Cir. 1985)). *Linhart* held that a former acting police chief's statements related to a village manager's performance were not intended as speech on a matter of public concern. 771 F.2d at 1010. But those statements were "never publicly expressed" and were "only of personal interest," possibly to "secur[e] the job of chief of police." *Id.* In contrast, Diaz spoke publicly against race-based hiring and in defense of Hoffman. *See* App. 138 (Diaz Depo. 170:8-17); App. 271-72; App. 312-13 ¶¶ 72-73. And, as discussed, Diaz's statements reflected her belief in maintaining the integrity of university policy, independent of her own interests. *See* App. 108 (Diaz Depo. 214:3-8).

**c.** Finally, a reasonable jury could conclude that Diaz's protected speech was at least a motivating factor in Schmidt's termination decision. Schmidt does not contest Diaz's evidence of retaliatory animus or temporal proximity. Nor does he dispute the case law establishing that this evidence can show that retaliation for Diaz's protected speech was at least a motivating factor in her firing. *See* Opening Br. 45-47; *Adebiyi v. S. Suburban Coll.*, 98 F.4th 886, 892 (7th Cir. 2024).

Instead, Schmidt offers purported alternative justifications for firing Diaz, focusing on (1) "repeated complaints" about Diaz from faculty, staff, and students, and (2) Gerry Precaido's texts with Schmidt. *See* Schmidt Br. 50-51. But Schmidt's focus on complaints about Diaz ignores numerous instances of the faculty's admiration and support for her. *E.g.*,

App. 200-01, 362, 370, 373-74. Nor does Schmidt recognize that a jury could find that the rift between some members of the campus community and Diaz stemmed from her opposition to race-based workplace policies, such that firing Diaz for community complaints was merely a bankshot method of firing her for protected speech. *See* Opening Br. 48 (citing App. 48, 50, 84, 138, and 219).

Schmidt's reliance on Preciado's texts is likewise flawed. Schmidt's assertion that Diaz was "unable to rehabilitate herself," Schmidt Br. 50, points to Preciado's statement in text messages that Diaz had a "prideful unwillingness to apologize," App. 241. A jury, however, could readily disbelieve this characterization based on its "weaknesses" and "implausibilities." *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 487 (7th Cir. 2015) (quoting *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012)). After all, Diaz had already delivered an apology, s*ee* App. 121 (Diaz Depo. 70:18-71:8), 124 (Diaz Depo. 95:16-96:23), 318 (Diaz's draft remarks), that was deemed insufficient even though neither Preciado nor Schmidt articulated what more was needed, App. 121 (Diaz Depo. 70:18-71:8), 124 (Diaz Depo. 95:16-96:23).

What Diaz *was* unwilling to apologize for was her opposition to discriminatory calls for race-based hiring. App. 79 (Diaz Depo. 98:17-99:24), 138 (Diaz. Depo. 170:8-17). If this was the basis for Schmidt's and Preciado's views that Diaz had not sufficiently apologized, a jury could— indeed, likely would—find that Diaz's refusal to apologize cannot be the

basis of "a legitimate and nonretaliatory explanation for the firing." *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017). Given these evidentiary disputes about the legitimacy of Schmidt's asserted reasons for firing Diaz, Schmidt has not shown that he would have terminated her employment "even in the absence of [her] protected speech." *See v. Ill. Gaming Bd.*, 29 F.4th 363, 368 (7th Cir. 2022).

Out of other options, Schmidt asserts that two "intervening events"— Diaz's performance plan and his meeting with Diaz's direct reports— "solidified" his termination decision. Schmidt Br. 51. But a jury could well find that these assertions, too, contain "implausibilities, inconsistencies, or contradictions," suggesting pretext. *Greengrass*, 776 F.3d at 487 (quoting *Coleman*, 667 F.3d at 852). For example, Schmidt asked Diaz for an "improvement plan" on September 2, 2022, App. 126-127 (Diaz Depo. 105:18-106:4), just one day after Diaz refused to suppress Hoffman's discrimination complaint, App. 125 (Diaz Depo. 98:12-101:20). This timing suggests that the improvement plan was simply the first step in retaliating against Diaz for refusing to interfere with Hoffman's complaint.

As for Schmidt's meeting with three of Diaz's direct reports, those employees represented only a tiny fraction of the more than 60 employees Diaz oversaw. App. 312 ¶ 65. Of the three, moreover, one (Emmanuel) had only recently joined the university, *see* App. 118 (Diaz Depo. 36:25-37:9), and another (O'Halloran) had actively delayed the responses to

Hoffman's complaints, *see* App. 343-46. A jury could reasonably disbelieve that Schmidt's conversation with these direct reports in fact motivated Diaz's firing; alternatively, it could find that the direct reports' complaints about Diaz were themselves not "wholly unrelated" to Diaz's protected speech, *Kidwell v. Eisenhauer*, 679 F.3d 957, 968 (7th Cir. 2012). And even if a jury could believe that Schmidt's decision to fire Diaz was *partially* based on permissible motives, it could still find that retaliating for Diaz's protected speech was "at least a motivating factor" in Schmidt's decision. *Id.* at 964 (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).

**2. Summary judgment is unwarranted on Diaz's Section 1981 claim.**

A reasonable jury could rule for Diaz on her Section 1981 claim. *See* Opening Br. 50-55.

**a.** The record shows that Diaz's speech was protected opposition to an unlawful employment practice under Section 1981. Diaz engaged in protected "active opposition" when she expressly refused Schmidt's request to dissuade Hoffman from filing her complaint. *See McDonnell v. Cisneros*, 84 F.3d 256, 262 (7th Cir. 1996) (collecting cases).

Schmidt asserts that Diaz did not in fact oppose an unlawful practice as defined in 42 U.S.C. § 2000e-3(a) because his request that Diaz dissuade Hoffman did not signify his belief that Hoffman's discrimination complaint had merit. Schmidt Br. 52-53. Schmidt is incorrect on the law

and the facts. Diaz's conduct was protected if she had a "good faith" and "reasonable" belief that Schmidt's request was discriminatory, regardless of the actual "fact of discrimination." *Rucker v. Higher Educ. Aids Bd.*, 669 F.2d 1179, 1182 (7th Cir. 1982). And in any event, a reasonable jury could find that Schmidt's request was discriminatory because he knew or should have known that Hoffman's complaint had merit. After all, he knew that Hoffmann had faced backlash because she is white, App. 214 (Schmidt Depo. 137:21-138:8), his staff briefed him on the complaint, App. 189 (O'Halloran Depo. 99:11-100:22), and he admits that the complaint concerned a hostile work environment, App. 215 (Schmidt Depo. 141:18-142:11).

Diaz also engaged in protected "[p]assive resistance" by not intervening in Hoffman's complaint process. *McDonnell*, 84 F.3d at 262; *see* Opening Br. 58; App. 117 (Diaz Depo. 22:2-4). Schmidt says that *McDonnell* is distinguishable because (1) it involved a pair of supervisor- and subordinate-plaintiffs who were both victims of sexual harassment, *see* 84 F.3d at 258, and (2) the employer clearly wanted the supervisor-plaintiff to prevent his subordinate from filing a complaint, *id.* at 262. *See* Schmidt Br. 54-55.

The first distinction confuses *McDonnell*'s facts for its legal reasoning. *McDonnell* was clear that one employee's "assisting another employee with [her] discrimination claim … is protected opposition conduct"— whether or not the first employee experienced discrimination. 84 F.3d at

262 (quotation marks omitted). And Schmidt's second distinction is no distinction at all. Diaz testified that Schmidt "asked [her] to dissuade Rochelle Hoffman from filing a formal or official complaint." App. 115 (Diaz Depo. 16:8-9). That is evidence of Schmidt's "clear desire" to prevent Hoffman from filing her complaint. Schmidt Br. 55.

Last, a reasonable jury could find that Diaz held a good-faith subjective belief that she was opposing unlawful discrimination against Hoffman. *See* Opening Br. 53-54. Schmidt agrees that Diaz believed in "Hoffman's right to file a complaint free from interference," but questions if she did so knowing that Hoffman's complaint had merit. Schmidt Br. 53-54. But there is ample evidence from which a reasonable jury could conclude that Diaz knew that Hoffman had experienced unlawful discrimination based on race. *See* App. 81 (Diaz Depo. 107:8-9) (explaining that Hoffman "felt the comments" about Hoffman's race "were made specifically at her and because of her. I did not disagree … ."); App. 128 (Diaz Depo. 110:18-21) ("I believe Cheri was, much like Rochelle [Hoffman], also being mistreated in spaces where she was white."); *see also* App. 271-72; App. 312-13 ¶ 73; App. 379 (Hoffman's complaint noting Diaz witnessed the discrimination against Hoffman).

**b.** A reasonable jury could also find that Diaz's protected opposition caused her termination. Although Schmidt alludes to Section 1981's but-for causation standard as being "more difficult" to satisfy than the First Amendment's motivating-factor test, Schmidt Br. 55, he provides no

explanation of how, in this case, the causation outcome actually would differ between the two. In any event, the Supreme Court has held that a but-for cause "need not be the sole or primary cause of the employer's adverse action." *Bostock v. Clayton County*, 590 U.S. 644, 665 (2020). So, Diaz's First Amendment causation arguments suffice to show causation for her Section 1981 claim. *See supra* at 24-27; Opening Br. 44-50.

## Conclusion

This Court should reverse the district court's grant of summary judgment to Schmidt on sovereign-immunity grounds and remand for the district court to consider Diaz's claims on the merits in the first instance. If the Court chooses to consider the merits, it should remand for trial.

Respectfully submitted,

Michael R. Fox
  *Counsel of Record*
Christopher M. Kloth
Fox & Fox, S.C.

Umair Ahsan
  Student Counsel

/s/Alex Bodaken
Alex Bodaken
Brian Wolfman
Ciara Cooney
GEORGETOWN LAW APPELLATE
  COURTS IMMERSION CLINIC
600 New Jersey Ave. NW,
Suite 312
Washington, D.C. 20001
(202) 662-9016
alex.bodaken@georgetown.edu

Counsel for Plaintiff-Appellant Olga Diaz

August 12, 2026

## Certificate of Compliance

In accordance with Federal Rule of Appellate Procedure 32(g), I certify that this brief:

(i) complies with the type-volume limitation of Rule 32(a)(7)(B) and Circuit Rule 32(c) because it contains 6,956 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word, set in Century Schoolbook in 14-point type.

/s/ Alex Bodaken

Alex Bodaken